MICHAEL R. SEW HOY (Cal. Bar No. 243391)
Email: sewhoym@sec.gov
JACOB A REGENSTREIF (Cal. Bar No. 234734)
Email: regenstreifj@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Katharine E. Zoladz, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| VERDEGROUP INVESTMENT PARTNERS, INC.; THOMAS GAFFNEY; and LISA GORDON, | |
| Defendants, | |
| and | |
| TOMMY'S PIZZA VENTURES, INC.; and CYNTHIA GAFFNEY, | |
| Relief Defendants. | |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a) and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a).

2.      Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this complaint.

3.      Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district.  In addition, venue is proper in this district because Defendant Gordon resides in this district.

## SUMMARY

4.      This action involves a securities offering fraud by an issuer and its director and control person that raised over $612,765 from investors located in multiple states from January 2018 through July 2019, ostensibly to finance marijuana businesses.

5.      In soliciting investor funds to invest in marijuana businesses, recidivist violator of the securities laws defendant Thomas Gaffney ("Gaffney"), who was the principal and control person of defendant VerdeGroup Investment Partners, Inc. ("VerdeGroup"), misled and deceived actual and prospective investors about how their monies would be used, about VerdeGroup's business partners, and about VerdeGroup's purportedly imminent initial public offering.

6.      Rather than receiving money in his own name, Gaffney disguised his role by directing investors to send their funds to a third party account.  Investor funds were

1

transferred from that third party account to an account in the name of relief defendant Tommy's Pizza Ventures, Inc. ("Tommy's Pizza"), the signatories of which are Gaffney and relief defendant Cynthia Gaffney.  Investor funds were then used for Gaffney's personal expenses, and a pizza parlor business, among other things. VerdeGroup and Gaffney misappropriated approximately $467,110 of investor money.

7.     To further generate investor interest in the offering, defendants Gaffney and VerdeGroup also made material misrepresentations to investors and prospective investors about VerdeGroup's business partners and its efforts to undertake an initial public offering.  Gaffney and VerdeGroup made the same or similar misrepresentations to lull investors into not withdrawing funds and to encourage investors to invest more and/or rollover funds to a different entity.

8.     VerdeGroup and Gaffney used general solicitation to attract investors, including advertisements in newspapers and the use of VerdeGroup's website, verdegroupinvest.com.

9.     Defendant Lisa Gordon, hired by Gaffney to handle VerdeGroup investor relations, acted as an unregistered broker-dealer in connection with the offering and directly offered and sold securities by soliciting investors through phone calls and emails.

10.     The securities offering was not registered with the SEC as required by the Securities Act.

11.     At least some of the investors were not provided with the information that a registration statement is required to provide for the protection of investors.

12.     In addition, at least one of the investors was unaccredited.

13.     Through their conduct, and as further detailed herein, all three defendants violated the registration provisions of Section 5 of the Securities Act; VerdeGroup and Gaffney violated the antifraud provisions of Section 17(a) of the Securities Act and Section 10b of the Exchange Act and Rule 10b-5 thereunder; and Gordon violated the broker registration provisions of Section 15 of Exchange Act.

2

Relief Defendants Tommy's Pizza and Cynthia Gaffney were unjustly enriched by the receipt of investors' funds to which they had no legitimate claim.

14.     The SEC seeks findings that Defendants committed these violations; permanent injunctions; disgorgement with prejudgment interest from Defendants and Relief Defendants, and civil monetary penalties against Defendants.

## DEFENDANTS

15.     **VerdeGroup Investment Partners, Inc. ("VerdeGroup")** is a Wyoming corporation with its principal places of business in Indian Harbour Beach, Florida and Buffalo, Wyoming.  During the relevant period, VerdeGroup's website listed its address in Los Angeles, California.  VerdeGroup claims to be an investment and business financing firm focused on investing in the legal marijuana industry. VerdeGroup and its securities have never been registered with the SEC in any capacity.

16.     **Thomas Gaffney ("Gaffney")**, age 55, resides in Satellite Beach, Florida.  Gaffney is listed as a VerdeGroup director in its Wyoming corporate filings. Gaffney is a founder and CEO of Tommy's Pizza Ventures, Inc.  Gaffney and his prior company, Health Sciences Group, Inc., for which he was the president and CEO, were sued by the SEC in 2013 for engaging in a fraudulent scheme involving a company's stock; the scheme involved illicit kickbacks to encourage the purchase of the stock and phony agreements to mask those kickbacks. *SEC v. Gaffney, et al.*, Case No.: 13-cv-61765-RNS (S.D. Fl.).  Gaffney settled to fraud violations of the federal securities laws, and the district court entered a final judgment permanently enjoining him from violating Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5(a) thereunder.  Gaffney was also charged by information in 2012 by the U.S. Attorney's Office for the Southern District of Florida for violations of mail fraud regarding related conduct to the 2013 SEC case, and entered a guilty plea on August 8, 2013.  *See U.S. v. Thomas Gaffney*, Case No. 12-60224-CR-Dimitrouleas.  He was sentenced to time served, followed by three years

3

of supervised release with a special condition of eight months of home confinement, among other things.

17. **Lisa Gordon ("Gordon")**, age 60, resides in Woodland Hills, Los Angeles County, California. VerdeGroup listed Gordon as its "Investor Relations" contact. She is listed as the "Treasurer or Fiscal Agent" on VerdeGroup's Wyoming corporate filing. She has never held any securities licenses and has never been associated with an entity registered with the SEC.

## RELIEF DEFENDANTS

18. **Tommy's Pizza Ventures, Inc. ("Tommy's Pizza")** is a Florida corporation with its principal place of business in Indian Harbour Beach, Florida. Tommy's Pizza claims to run a casual chain of pizza parlors. Tommy's Pizza and its securities have never been registered with the SEC in any capacity.

19. **Cynthia Gaffney ("Cynthia Gaffney")**, age 55, resides in Satellite Beach, Florida. Cynthia Gaffney is Thomas Gaffney's wife and is a founder and the president of Tommy's Pizza. She and Gaffney are the sole signatories on the Tommy's Pizza bank account.

## THE ALLEGATIONS

**A.   VerdeGroup's Offering**

20. From January 2018 through July 2019, VerdeGroup raised approximately $612,765 from approximately 27 investors from several states including Florida and Nevada, in an unregistered securities offering of promissory notes. Investors sent checks payable to a New York based company ("Company A") or wired funds to a bank account in the name of Company A. Investor funds were then sent from the Company A bank account to a bank account in the name of Tommy's Pizza and controlled by Gaffney and Relief Defendant Cynthia Gaffney.

21. The offering was conducted using a Private Placement Memorandum ("PPM") that offered $25,000,000 in promissory notes at $5,000 per unit with a minimum purchase of $10,000.

22.     The PPM stated that the notes provided a 12% annual rate of return that matured in 24 months and converted to equity at maturity.

23.     The PPM specified that VerdeGroup is "an investment and business financing firm focused on the legal marijuana industry," providing "high interest loans to marijuana and marijuana related business."  VerdeGroup also claimed in the PPM that it "invests in equity positions with legal marijuana companies" and that it "anticipates 'Going Public' in 2019."  The PPM also stated that "the use of the proceeds is for growth and procurement of the business as described herein." The PPM stated that over ninety percent of the proceeds from the offering will be used for "Investments" and "Working Capital."

24.     The term sheet provided to prospective investors ("Term Sheet") stated that VerdeGroup would "use proceeds from this Offering … in line with its business plan," and that "proceeds from the sale of NOTES … will be … available for use by [VerdeGroup] at its discretion to place soft deposits on properties to tie up for acquisition."

25.     The PPM identifies "Thomas Lynch" as VerdeGroup's president, but Gaffney directly and indirectly controlled VerdeGroup.

26.     The PPM identified Gordon as "Investor Relations" and provided contact information, including an address in Tarzana, CA, a phone number, and an email address, financialcatalyst@gmail.com.

27.     The email address identified on the PPM – financialcatalyst@gmail.com – is the same email address VerdeGroup provided to the Wyoming Secretary of State.

28.     Gordon used the email address: financialcatalyst@gmail.com to communicate with prospective and actual investors.

**B.     General Solicitation of Investors**

29.     The offering involved the general solicitation of investors and prospective investors.

30.     To solicit investors, VerdeGroup and Gaffney purchased and placed

5

newspaper advertisements in several different states.

31.    The advertisements directed potential investors to contact VerdeGroup at a certain phone number and to visit VerdeGroup's website at verdegroupinvest.com.

32.    The advertisements repeated some of the information in the PPM.

33.    For example, one advertisement placed in at least two different newspapers in different states stated that "OUR COMPANY IS OFFERING THE OPPORTUNITY FOR MAIN STREET PEOPLE TO INVEST IN THE LEGAL MARIJUANA INDUSTRY.  OUR LEGAL MARIJUANA FUND IS NOW ACCEPTING NEW INVESTORS."

34.    That same advertisement also stated: "12% GUARANTEED APR $10,000 MIN. INVESTMENT."

35.    VerdeGroup's website provided similar representations as the newspaper advertisements and instructions on how to invest in the offering.

36.    For example, the website stated that "Our company is offering the opportunity for main street people to invest in legal marijuana industry.  Our legal marijuana fund is now accepting new investors."  It also stated that it was "Conducting Business in all legal states," it had a "12% Guaranteed APR," a "$10,000 Minimum Investment," and that its "mission is to create wealth for our shareholders and investment partners by exclusively … investing in a broad spectrum of both private and public legal marijuana companies throughout the U.S. and Canada."  VerdeGroup's website touted VerdeGroup's bona fides: stating that it "has been a primary investor to legal marijuana wholesale cultivators, pharmaceutical companies, marijuana technology companies and marijuana retailers for more than 10 years," that "Nobody knows the marijuana investment verticle [sic] better than we do."

37.    The website repeated the details of the offering in the PPM: "VerdeGroup … is offering 24 month Convertible Promissory Notes that Yield 12%APR."  It stated that the "minimum investment is $10,000.00 and converts to

100,000 shares of stock.  Prior to conversion you will earn 12% per year."

38.     The website also stated that "VerdeGroup intends to go public in 2019."

39.     The website provided the same phone number to inquire about investing as provided in the advertisements.

40.     Gaffney is listed as the owner of VerdeGroup's website.

41.     On at least one occasion, on or about February 27, 2019, Gaffney – using the email address tomgaffneypresents@yahoo.com – responded by email to a third party inquiry regarding information on the VerdeGroup website.

42.     Gaffney used the following email address – tomgaffneypresents@yahoo.com – to communicate on behalf of VerdeGroup.

43.     Gaffney also drafted at least one update letter to investors that included solicitations for additional investment.

44.     When some investors called the phone number identified on the newspaper advertisement and website and the phone number identified on the PPM, Gordon received the calls.

45.     On or about March 21, 2018, Gordon emailed at least one prospective investor and investor from the email address identified in the PPM.

46.     Gordon provided the Term Sheet and the PPM to several prospective investors, including, for example, on or about April 3, 2018 and October 4, 2018.

47.     On or about April 3, 2018, Gordon encouraged at least one prospective investor to visit the VerdeGroup website.

48.     Gordon personally communicated with investors and prospective investors about the offering, including during phone calls and emails.

49.     Gordon personally communicated with existing investors for additional investments in VerdeGroup.

50.     The offering constituted an offer and sale of securities, in the form of convertible to equity promissory notes, in that it involved an investment: (a) in a business enterprise; (b) that was offered broadly to the public; and (c) and

purportedly issued to raise money to invest in marijuana businesses, at high rates of return.

**C.   The Fraud**

      **1.   VerdeGroup and Gaffney Misled and Deceived Investors Regarding Their Misappropriation of Investor Funds**

51.    VerdeGroup and Gaffney misappropriated VerdeGroup investor funds. From January 2018 through July 2019, through its unregistered offering, VerdeGroup raised approximately $612,765 from approximately 27 investors.

52.    Pursuant to the PPM, the approximate $612,765 was deposited in bank accounts in the name of Company A (the "Company A Account").

53.    Company A wired approximately $467,110 from the Company A Account to an account in the name of Tommy's Pizza (the "Tommy's Pizza Account").

54.    Gaffney and Cynthia Gaffney are the only signatories on the Tommy's Pizza Account.

55.    The Indian Harbour Beach, Florida address associated with the Tommy's Pizza Account is the same address attributed to Gaffney in VerdeGroup's Wyoming corporate filing.

56.    Gaffney and Cynthia Gaffney knowingly or recklessly spent these funds in ways that were contrary to the use of proceeds as set forth in the PPM.

57.    Contrary to the representations in the PPM, Gaffney and Relief Defendant Cynthia Gaffney used the investor funds to finance the Tommy's Pizza pizza parlor, and numerous other personal expenses, including Tiffany's jewelry, Carnival Cruise Lines travel, and other daily expenses.  This use of investor funds was not disclosed in the PPM.

58.    In July 2019, when the last investor funds were transferred, the ending balance in the Tommy's Pizza Account was $50.

59.    At least one check drawn on the Tommy's Pizza Account, dated June 12,

2020, was written to "Lisa Gordon Ent.".

60.    Investors were not aware that VerdeGroup investor funds were being used (1) to pay Gaffney and Cynthia Gaffney's personal expenses; and (2) to pay expenses of the Tommy's Pizza pizza parlor.

61.    Investors would have considered it important in making their decision to invest in VerdeGroup whether the funds raised from VerdeGroup investors were being used for purposes other than the stated purposes.

62.    Relief defendants Tommy's Pizza and Cynthia Gaffney each received money from VerdeGroup and Gaffney's fraud.

63.    Relief defendants Tommy's Pizza and Cynthia Gaffney each had no legitimate claim to the money they received.

## 2.    VerdeGroup and Gaffney Misled and Deceived Investors Regarding Their Business Partners

64.    In connection with the offering, VerdeGroup represented that several marijuana business associations were "partners" on VerdeGroup's website, where potential investors were directed to from the advertisements.

65.    As of December 2018, the website included write-ups and logos of these associations, including the Marijuana Business Association ("MJBA") and the National Cannabis Industry Association ("NCIA").

66.    In reality, and as VerdeGroup and Gaffney knew, or were reckless or negligent in not knowing, VerdeGroup had no business relationship with either the MJBA or the NCIA.

67.    In or around February 27, 2019, the NCIA sent a cease and desist letter to the email address identified on VerdeGroup's website – info@verdegroupinvest.com – demanding its logo be removed from VerdeGroup's website due to unauthorized use of the NCIA mark.  Gaffney responded to the cease and desist letter via the email address tomgaffneypresents@yahoo.com on behalf of VerdeGroup and removed the website's reference to the NCIA.

68.     As of February 2019, MJBA had no communications with VerdeGroup.

69.     Investors and prospective investors would have considered it important in making their decision to invest in VerdeGroup whether the statements made about its affiliation with either the MBA or the NCIA were correct, in assessing the legitimacy of VerdeGroup and its prospects for generating a return on their investments.

### 3.     VerdeGroup and Gaffney Misled and Deceived Investors Regarding Their Plans to Take VerdeGroup "Public"

70.     In the PPM, VerdeGroup and Gaffney misrepresented that VerdeGroup "anticipates 'Going Public' in 2019."

71.     VerdeGroup's website also stated that it "intends to go public in 2019."

72.     Upon information and belief, in a letter sent to investors titled a "CEO Mid-Year 2019 Letter to Shareholders," VerdeGroup's purported CEO Thomas Lynch wrote that "we are proud to announce that we will be going public sometime in the second quarter 2020" (the "Mid 2019 Letter").

73.     The Mid 2019 Letter also states that VerdeGroup has "already begun the process with the SEC" for a "Direct IPO" via an "S1 Registration Statement."

74.     The Mid 2019 Letter encouraged additional investment and added that a registered broker-dealer ("Brokerage Firm A") had agreed to be VerdeGroup's lead market maker.

75.     VerdeGroup and Gaffney have continued to misrepresent their efforts to "go public."

76.     In March 2021, Gordon emailed investors another update letter allegedly from CEO Thomas Lynch (the "March 2021 Letter").

77.     The March 2021 Letter's metadata reveals that Gaffney was the author.

78.     The March 2021 Letter states that "[w]e have already began [sic] the process with the SEC last April 2020" and again refers to the "S1 Registration Statement" and Brokerage Firm A.

10

79.    The March 2021 Letter claims that VerdeGroup needs to withhold investors' annual 12% returns to cover the cost of a "Forensic Peer Review Audit" that the "SEC requires" for companies going public.

80.    No such requirement exists.

81.    Nor is there a Form S-1 registration statement for VerdeGroup on file with the SEC.

82.    In reality, and as VerdeGroup and Gaffney knew, or were reckless or negligent in not knowing, VerdeGroup was not going public in 2019 or 2020.

83.    In reality, and as VerdeGroup and Gaffney knew, or were reckless or negligent in not knowing, VerdeGroup had begun no process with the SEC for a "Direct IPO" via an "S1 Registration Statement".

84.    In reality, and as VerdeGroup and Gaffney knew, or were reckless or negligent in not knowing, VerdeGroup did not need funds to cover the cost of a "Forensic Review Audit" and the SEC did not require such an audit for companies going public.

85.    In reality, and as VerdeGroup and Gaffney knew, or were reckless or negligent in not knowing, VerdeGroup had no agreement with Brokerage Firm A for the latter to be VerdeGroup's lead market maker.

86.    Investors and prospective investors would have considered it important in making their decision to invest in VerdeGroup whether the statements made about it "going public," about the process with the SEC for a "Direct IPO," and its agreement with Brokerage Firm A were correct, in assessing the legitimacy of VerdeGroup and its prospects for generating a return on their investments.

87.    Investors and prospective investors would have considered it important in making their decision to invest in or retain their investment in VerdeGroup whether the statement made about requiring funds to cover an SEC-required "Forensic Review Audit," was correct, in assessing the legitimacy of VerdeGroup and its prospects for generating a return on their investments.

88.     VerdeGroup and Gaffney engaged in a fraudulent offering scheme. VerdeGroup and Gaffney solicited investors, directing them to send funds to the Company A Account, which were then directed to the Tommy's Pizza Account. From these accounts, approximately $467,110 in investor funds was misappropriated for personal expenses and pizza parlor expenses, among other things.

### 4.     Lulling of investors and concealment of the scheme

89.     In or around February 19, 2019, one investor contacted Gordon to inquire as to VerdeGroup's plan for an initial public offering.  On or about February 19, 2019, Gordon emailed him and said it would be in December 2019.

90.     In or around December 3, 2019, the same investor contacted Gordon, asking again if VerdeGroup would initiate its public offering of shares.  On or about December 3, 2019, Gordon replied that VerdeGroup would go public in the second quarter of 2020.

91.     In December 2019, the same investor and Gordon spoke telephonically and Gordon said that there were some problems but that VerdeGroup would still initiate its public offering.

92.     In March 2021, Gordon told that same investor that he would not be receiving his annual payment and provided him the March 2021 Letter.

93.     As explained above, the March 2021 Letter provides the purported progress of VerdeGroup's initial public offering process and encourages existing investors to invest more and to "Roll Over" their VerdeGroup shares to shares in another entity.

94.     In or around October 2019, an elderly investor called Gordon and inquired about her annual return.

95.     In response to that inquiry the investor received her annual return in the form of a check mailed from the same Indian Harbour Beach, Florida address associated with Gaffney in the Wyoming corporate filings and with the Tommy's Pizza Account.

96.    After the investor received the check, Gordon called the investor and solicited an additional investment from the investor.

97.    The investor made a second, additional investment of $10,000 in response to Gordon's solicitation on or around November 2019.

98.    As explained above, the March 2021 Letter claims that initial public offering process is ongoing "with the SEC", again refers to the "S1 Registration Statement" and Brokerage Firm A, and that VerdeGroup needs to withhold investors' annual return to cover the cost of a "Forensic Peer Review Audit" that the "SEC requires" for companies going public.

99.    No such requirement exists.

100.    Nor is there a Form S-1 registration statement for VerdeGroup on file with the SEC.

101.    The March 2021 Letter also encourages existing investors to invest more and to "Roll Over" their VerdeGroup shares to shares in another entity.

102.    VerdeGroup and Gaffney attempted to conceal Gaffney's role in the fraud.

103.    Gaffney is not listed in the PPM, the Term Sheet, the newspaper advertisement, or the website.

104.    Gaffney reviewed the PPM.

105.    Gordon is identified in the PPM and Term Sheet as "Investor Relations."

106.    Gordon responded to investor and prospective investor inquiries sent to the contact information on the PPM, newspaper advertisement, and website.

107.    Gordon was the only individual who directly communicated with investors by phone and email.

108.    The PPM directed investors to make payments to Company A, not Gaffney.

109.    Gaffney admitted that he has known Gordon for over twenty-five years, reviewed the VerdeGroup offering documents, and sent returns to VerdeGroup

investors in the form of cashier's checks.

### D. Defendants' Misrepresentations Were Material and Made With Scienter

110.   All of the false and misleading statements in the PPM, the Mid 2019 Letter, and the March 2021 Letter were material.  A reasonable investor would have considered it important to know that VerdeGroup was not, and had no intention of, "going public," in 2019 or 2020, that VerdeGroup had not begun a "Direct IPO" process with the SEC, and that VerdeGroup had no agreement with Brokerage Firm A.  In addition, a reasonable investor would have considered it important to know that VerdeGroup investor funds would be used for payment of Gaffney and Cynthia Gaffney's personal expenses, pizza parlor expenses, and other purposes not disclosed in the PPM.

111.   Gaffney acted with scienter.  Gaffney knew, or was reckless in not knowing, that VerdeGroup was not, and had no intention of, "going public," in 2019 or 2020, that VerdeGroup had not begun a "Direct IPO" process with the SEC, and that VerdeGroup had no agreement with Brokerage Firm A.  Moreover, he controlled one or more of the bank accounts that received VerdeGroup investor funds; thus, he knew, or was reckless in not knowing, that he was misappropriating VerdeGroup investor funds for his own personal expenses, Tommy's Pizza pizza parlor expenses, and other undisclosed purposes.

112.   In addition, Gaffney and VerdeGroup failed to exercise reasonable care by, among other things, misappropriating investor funds and making materially misleading representations, and thus were negligent.

### E. Registration Violations: Sections 5(a) and 5(c) of the Securities Act

113.   The VerdeGroup offering was not registered with the SEC.

114.   The PPM represented that the offering was relying on a Section 4(2) exemption and a Rule 506 exemption.

115.   These exemptions did not apply.

14

116.   Not all of the investors in the offering were accredited investors.

117.   Although potential investors were sent a questionnaire as part of the offering process to "determine suitability" according to the PPM, at least for two investors, the information they provided on the questionnaire was not verified in any way, and at least one unaccredited investor was allowed to invest.

118.   As described above, the offering involved the general solicitation of investors and prospective investors.

119.   The offering was solicited via newspaper advertisement and VerdeGroup's website.

120.   At least one unaccredited investor was not furnished with financial statements, including an audited balance sheet.

121.   VerdeGroup is liable for the registration violation because it offered and sold its promissory notes.

122.   Gordon is liable under Section 5 of the Securities Act because she directly offered and sold securities by soliciting investors.

123.   Gaffney is liable under Section 5 of the Securities Act because he directly and indirectly offered and sold VerdeGroup securities. Gaffney directly and indirectly, exercised day-to-day control over VerdeGroup, and Gaffney directly and indirectly, controlled and conducted the unregistered securities offerings by VerdeGroup, all for the stated purpose of raising investor funds to invest in the marijuana business.  He was intricately involved in the offer and sale of the promissory notes.  Those notes were marketed to investors through the VerdeGroup website Gaffney controlled.  Gaffney was also VerdeGroup's only director, he controlled its website, he drafted at least one update letter that included solicitations for additional investment, and he received proceeds of the offering.

### F.   Violation of Section 15(a) of the Exchange Act

124.   Gordon acted as an unregistered broker for the offering.

125.   Gordon was not registered with the SEC as a broker-dealer in

15

accordance with Section 15(b) of the Exchange Act, or associated with a registered broker-dealer.

126.   Gordon was listed by VerdeGroup as its "Investor-Relations" contact on the PPM.

127.   Gordon emailed and sent VerdeGroup offering documents to the investors and received the offering documents from them.

128.   Gordon also actively and repeatedly solicited investors by email and on the phone to make both initial and additional investments in VerdeGroup.

129.   Gordon encouraged investment in the offering by making general representations about VerdeGroup, including that it was "a good deal" and that it was "really taking off."

130.   On at least one occasion, on or about October 4, 2018, Gordon assisted one potential investor with completing the paperwork to invest in the offering.

131.   On at least one occasion, Gordon handled VerdeGroup funds to make payments to investors.  On or around July 10, 2020, a cashier's check was issued listing Gordon as the remitter and a memo line stating that the check was for VerdeGroup 2020 annual payment.

## FIRST CLAIM FOR RELIEF

### Unregistered Offer and Sale of Securities

### Violations of Sections 5(a) and 5(c) of the Securities Act

### (Against All Defendants)

132.   The SEC realleges and incorporates by reference paragraphs 1 through 131 above.

133.   The offering involved the offering of securities in the form of promissory notes which were convertible to equity.

134.   The offering was not registered with the SEC.

135.   Defendant VerdeGroup, as the issuer of the securities, directly offered and sold securities in the form of promissory notes through its PPM.

136.   Defendant Gaffney, directly and indirectly offered and sold VerdeGroup notes, and was a necessary participant and substantial factor in VerdeGroup's offering and the sale of the notes because, among other things, he controlled VerdeGroup, controlled the website where offers were being made, was its only director, drafted at least one update letter, and received proceeds from the offering.

137.   Defendant Gordon directly offered and sold securities in the form of promissory notes because she solicited investors through phone calls and emails.

138.   By virtue of the foregoing, (a) without a registration statement in effect as to that security, Defendants, directly and indirectly, made use of the means and instruments of transportation or communications in interstate commerce and of the mails to sell securities through the use of means of a prospectus, and (b) made use of the means and instruments of transportation or communication in interstate commerce and of the mails to offer to sell through the use of a prospectus, securities as to which no registration statement had been filed.

139.   By reason of the foregoing, Defendants directly or indirectly violated, and unless restrained and enjoined, will continue to violate, Section 5 of the Securities Act [15 U.S.C. § 77e].

## SECOND CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violations of Section 17(a) of the Securities Act

### (Against Defendants VerdeGroup and Gaffney)

140.   The SEC realleges and incorporates by reference paragraphs 1 through 131 above.

141.   In connection with the offer or sale of securities, VerdeGroup and Gaffney misled and deceived investors and prospective investors about (1) the use of VerdeGroup investor funds, (2) VerdeGroup's business partners; and (3) VerdeGroup's initial public offering.  VerdeGroup and Gaffney knew the claims made regarding the use of funds, business partners, and initial public offering were

false. This information was material, and VerdeGroup and Gaffney obtained money by means of the fraud, as it received the investors' funds from the sales of the promissory notes.

142.   In addition, VerdeGroup and Gaffney engaged in a scheme to defraud whereby they defrauded investors by making and/or disseminating false and misleading statements, misused investor funds by diverting substantially all of the funds to Tommy's Pizza and using them for Gaffney's personal expenses, and concealed Gaffney's role in the fraud by making Gordon and others the contact for investors.

143.   By engaging in the conduct described above, VerdeGroup and Gaffney, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

144.   VerdeGroup and Gaffney, with scienter, employed devices, schemes, or artifices to defraud; and VerdeGroup and Gaffney, with scienter or negligence, obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and VerdeGroup and Gaffney, with scienter or negligence, engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

145.   VerdeGroup acted entirely through Gaffney's knowledge, recklessness and/or negligence which may be imputed to VerdeGroup.

146.   By reason of the foregoing, VerdeGroup and Gaffney violated, and unless restrained and enjoined will continue to violate, Sections 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### THIRD CLAIM FOR RELIEF

**Fraud in Connection with the Purchase or Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

**(Against Defendants VerdeGroup and Gaffney)**

147.   The SEC realleges and incorporates by reference paragraphs 1 through 131 above.

148.   In connection with the purchase or sale of securities, VerdeGroup and Gaffney misled and deceived investors and prospective investors about (1) the use of VerdeGroup investor funds, (2) VerdeGroup's business partners; and (3) VerdeGroup's initial public offering.

149.   Because Gaffney, as the director of VerdeGroup, directly and indirectly controlled the entity and exercised day-to-day control over the entity, Gaffney is the maker of these statements to investors, along with the entity.

150.   By engaging in the conduct described above, VerdeGroup and Gaffney, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or the mails, employed devices, schemes, or artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

151.   VerdeGroup and Gaffney, with scienter, employed devices, schemes, or artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and engaged in acts,

19

practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities by the conduct described in detail above.

152.   VerdeGroup acted entirely through Gaffney's knowledge and/or recklessness, which may be imputed to VerdeGroup.

153.   By reason of the foregoing, VerdeGroup and Gaffney violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## FOURTH CLAIM FOR RELIEF

### Unregistered Broker-Dealer

### Violation of Section 15(a) of the Exchange Act

### (against Defendant Gordon)

154.   The SEC re-alleges and incorporates by reference paragraphs 1 through 131 above.

155.   As alleged above, Gordon acted as an unregistered broker-dealer because she each actively solicited investors, and made recommendations and other representations, both orally and in writing, about the merits of investing in VerdeGroup.

156.   By engaging in the conduct described above, Gordon made use of the mails and means or instrumentalities of interstate commerce to effect transactions in, and induced and attempted to induce the purchase or sale of, securities without being registered with the SEC in accordance with Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)].

157.   By engaging in the conduct described above, Gordon has violated, and unless restrained and enjoined, are reasonably likely to continue to violate, Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

///

///

## FIFTH CLAIM FOR RELIEF

### Control Person Liability

### Section 20(a) of the Exchange Act

### (against Defendant Gaffney)

158. The SEC re-alleges and incorporates by reference paragraphs 1 through 131 above.

159. Pursuant to Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)], any person who, directly or indirectly controls an entity that is liable under any provision of the Exchange Act or any rule or regulation thereunder, shall also be jointly and severally liable with and to the same extent as that entity, unless the controlling person can establish that he acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

160. As alleged above, VerdeGroup violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

161. Gaffney, as the director of VerdeGroup, directly and indirectly controlled the entity and exercised day-to-day control over the entity, including by controlling VerdeGroup's website, from which investors were solicited, drafting the letters to investors, and by receiving the proceeds of the investor funds. By reason of the foregoing, Gaffney is liable as a control person for VerdeGroup's violations of the Exchange Act and the rules and regulations thereunder.

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

### II.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining VerdeGroup and Gaffney, and their officers,

agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and Section 17(a) of the Securities Act [15 U.S.C. § 77q(a).]

### III.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining VerdeGroup, Gaffney, and Gordon and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c)].

### IV.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Gordon and her officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

### V.

Order Defendants to disgorge all funds received from their illegal conduct, together with prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)].

### VI.

Order Relief Defendants to disgorge all funds improperly transferred from VerdeGroup and Gaffney's fraud.

///

///

## VII.

Order Defendants to pay civil penalties under Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)].

## VIII.

Issue an order permanently enjoining Gaffney from directly or indirectly, including, but not limited to, through any entity owned or controlled by Gaffney, participating in the issuance, purchase, offer, or sale of any security in an unregistered offering by an issuer; provided, however, that such injunction shall not prevent Gaffney from purchasing or selling securities for his own personal account.

## IX.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## X.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated:  September 27, 2021

*/s/ Michael R. Sew Hoy*
Michael R. Sew Hoy
Jacob A. Regenstreif
Attorneys for Plaintiff
Securities and Exchange Commission